UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CHRISTY TSE, an individual,

    Plaintiff,

v.                                                          Case No.:

PAX TECHNOLOGY, INC.,
a Florida for-profit corporation,

    Defendant.

_____/

## **COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Christy Tse sues Defendant Pax Technology, Inc., and alleges:

1. While pregnant with her first child, Tse's husband died of cancer. Since then, she has raised her child as a single mother while balancing a successful career at Pax.

2. For over twelve years, Tse had been a loyal and dedicated employee of Pax. She worked countless hours. It was not unusual for her to work in the middle of the night, on weekends, and on holidays to support Pax. And she had been successful: she had risen to Vice President of Human Resources, reporting directly to Pax's Chief Executive Officer.

3. On July 30, 2025, that all changed when Pax told Tse that it had terminated her employment.

4.     About three weeks before, Tse had requested FMLA leave because she was battling severe depression. Although Pax approved the FMLA request, during her FMLA leave and while knowing that she was suffering from severe depression, Pax demanded that she continue to work. Pax bombarded her with text messages and emails, sometimes until after midnight. It demanded that she organize a mass-firing of Pax employees. It required her to attend two in-person management meetings. When she declined to attend one of the meetings because of the symptoms she was experiencing, Pax suspended her without pay, and then terminated her employment, all in violation of the Family and Medical Leave Act.[1]

### Jurisdiction and Venue

5.     The Court has jurisdiction under 28 U.S.C. § 1331.

6.     Venue is proper in the Middle District of Florida, Jacksonville Division, under 28 U.S.C. § 1391(b), as all events pertinent hereto occurred in Duval County, Florida.

### The Parties

7.     Christy Tse is a resident of Duval County, Florida, and a former employee of Pax.

---

[1] Pax's conduct also violated the Americans with Disabilities Act Amendments Act of 2008. Tse will assert her ADAAA claims after she exhausts her administrative remedies. Tse has filed a Charge of Discrimination with the EEOC, and she will file an amended complaint asserting her ADAAA claims within 90 days of receiving a right-to-sue letter.

8. At all relevant times, Tse was an "eligible employee" as defined by the FMLA, 29 U.S.C. § 2611(2)

9. Pax was a "covered employer" under 29 U.S.C. § 2611(4).

10. Tse suffered from a qualifying "serious health condition" under 29 U.S.C. § 2611(11), entitling her to take protected FMLA leave.

11. Pax is an "employer" as the term is defined by 29 U.S.C. § 2611.

### Factual Allegations

**TSE has been a dedicated and loyal Pax employee for many years.**

12. Pax hired Tse in September 2012 to manage its operations, including human resource functions.

13. In 2017, while Tse was pregnant with her first child, she lost her husband to cancer.

14. Since losing her husband, Tse has suffered from major depressive disorder intermittently and has been treated by medical providers for this condition. Her symptoms include marked fatigue, lack of interest and energy, difficulty sleeping, concentrating, and depressed affect. In 2019, Tse was diagnosed with depression.

15. Despite the severe misfortune of losing her husband and having to raise her son as a single mother, Tse had a successful career at Pax. As the company grew—growing from ten employees to over three hundred during

Tse's time with Pax—Tse proved she was an outstanding employee. Because of her hard work and dedication, she was promoted twice: once in 2019 to Director of Human Resources, and again in 2022 to Vice President of Human Resources, where she reported directly to Pax's Chief Executive Officer.

16.    Tse's major depressive disorder is a qualifying serious condition under the FMLA that substantially limits one or more major life activities.

17.    Pax was aware of Tse's medical condition.

**Tse obtains FMLA Leave**

18.    In the summer of 2025, Tse had been experiencing symptoms of her major depressive disorder and sought treatment.

19.    On July 8, 2025, Tse's provider completed the FMLA paperwork stating that it was "medically necessary" that Tse "no[t] work until 7/22/2025."

20.    On July 8, 2025, Pax approved Tse's FMLA leave, which began the same day.

21.    On Thursday, July 10, 2025, during Tse's FMLA leave, Pax employee, Sabrina Wilson—who was aware of Tse's FMLA leave—contacted Tse, asked for her home address, and then went to Tse's home to inform Tse that she had been demoted. Wilson also demanded that Tse attend a management meeting in person the following day.

4

22.     Fearing retaliation, Tse attended the management meeting on Friday, July 11, 2025, at Pax's office despite having been approved for FMLA leave and her doctor's instructions "no[t] to work."

23.     At the July 11, 2025 meeting, Tse met with Pax's Global Management and Wilson. They ordered Tse to prepare a reduction-in-force plan affecting fifty employees. Despite her FMLA leave, Pax required Tse to have the plan completed by Tuesday, July 15, 2025.

24.     In addition, Pax required Tse to identify any relatives or friends of the former CEO so Pax could terminate their employment. Pax threatened that Tse would "be in trouble" if she did not provide this information by July 15, 2025.

25.     Instead of addressing her medical condition, Tse worked through the weekend to complete these assignments, further aggravating her symptoms.

26.     From July 11, 2025 through July 15, 2015, Pax employees continued to send work-related questions and assignments to Tse.

27.     For instance, on Sunday, July 13, 2025, Wilson texted Tse beginning at 10:35 a.m. and continued texting her past midnight. Wilson sent Tse more than sixty messages, demanding that Tse complete various assignments for Pax.

28.     Wilson began by saying that she "need[ed] [Tse's] help" drafting two notices for Pax's employees. Wilson then directed Tse to research who Pax could hire for legal counsel ("I need legal counsel for vendor settlements. Please find 1 to 3 legal firms."). In connection with a looming reduction in force, Wilson directed Tse to "create a list [of] who we should keep, as I believe most of the people are not good." Wilson also demanded that Tse "create a list of 202 staff, 3 independent contractors, temp agencies, sound payment, versa tech, Innovative for HR meeting next Tues." She then asked Tse to "include vendors in your list [because] We need to see your recommendations[,]" and she asked how to "avoid triggering RIF, what is the max number we can layoff at a time." She also told Tse she was required to attend another "HR meeting at 10 am next Tuesday [July 15, 2025]."

29.     The communications with Tse and demands that she work while out on FMLA leave were not limited to Sunday, July 13, 2025; they continued throughout Tse's leave. In all, Wilson sent Tse over 100 messages, and demanded she do multiple tasks for Pax, including firing certain employees – all while Tse was supposed to take time off work to address her symptoms.

30.     After working all weekend to get the assignments completed, Tse informed Pax on Monday morning, July 14, 2025, that she would be unable to

attend the 10:00 am, July 15, 2025, Tuesday meeting due to her medical condition worsening.

31.     After Tse missed the meeting, Pax suspended Tse, deactivated her company email, and blocked her personal email.

32.     On the next day, July 16, 2025, Wilson informed Tse that Pax had suspended Tse without pay and would terminate her employment after her FMLA leave ended, so as not to violate FMLA.

33.     Pax followed through on its threat, and on the morning of July 23, 2025 —the day she was set to return from leave—Tse received a text message from Michael Burkholder, a Pax employee, that Pax was sending him to collect Tse's IT equipment, including her work computer.

34.     A few minutes later, a gang of Pax employees arrived at Tse's home and confiscated Tse's work computer.

35.     On July 30, 2025, Pax emailed Tse to notify her that her employment had been terminated effective July 24, 2025. The email gave no reason for Tse's termination.

36.     Tse's twelve years of dedication ended with an email.

37.     Since then, Pax has manufactured multiple reasons for its decision to terminate Tse's employment. Pax originally claimed it fired Tse for violating

the company's attendance policy, apparently ignoring that she had requested and was granted FMLA leave.

38. Pax has also asserted that Tse was fired as a result of some undefined investigation. But when asked under oath, Kelsey Shaw, Pax's Senior H.R. Administrator, conceded that Tse's termination was not related to the undefined investigation. Instead, Shaw testified that Pax fired Tse for not returning to work on July 23, 2025, apparently ignoring that Pax had seized Tse's computer and IT equipment earlier that morning.[2]

## COUNT I
### FMLA Interference

39. Tse realleges paragraphs 1-38.

40. Tse was entitled to leave under the FMLA.

41. Tse applied for two weeks of continuous medical leave under the FMLA.

42. Pax approved Tse's request for two weeks of continuous FMLA leave.

---

[2] Not only did Pax terminate Tse's employment in retaliation for her taking FMLA leave, when she applied for unemployment benefits, it claimed it had fired her for "misconduct connected with her work" in an attempt to deny her unemployment benefits. Only through the unemployment benefits process did Tse learn she was fired for allegedly violating the company's attendance policy. Tse appealed this decision, and a hearing was held where Pax representatives and Tse testified under oath. The hearing officer found Tse's testimony "more credible" and ruled in Tse's favor finding she had not been fired for misconduct connected with her work.

43.    Pax interfered with Tse's FMLA leave by texting her, calling her, requiring her to attend office meetings, and otherwise requiring Tse to perform work for Pax's benefit.

44.    Pax acted willfully when it violated the FMLA in that it knew or showed reckless disregard for the matter of whether its conduct was prohibited by the FMLA.

45.    Pax acted with malice or reckless indifference to Tse's federally protected rights.

46.    Pax's conduct, including requiring her to work, demoting, suspending, and terminating her employment in response to Tse's protected conduct, is unlawful interference prohibited by the FMLA.

47.    Pax terminated Tse in retaliation for Tse's use of her FMLA rights.

48.    Pax's unlawful conduct has caused and continues to cause Tse past and ongoing damages.

49.    Plaintiff has retained the undersigned counsel and is obligated to pay them a reasonable fee for their services

WHEREFORE, Plaintiff Christy Tse seeks judgment prohibiting the discriminatory practices set forth above, an order awarding back pay, front pay, liquidated damages, attorneys' fees and costs, equitable relief including reinstatement, and any other relief that this Court deems just and equitable.

9

## COUNT II
### FMLA Retaliation

50.    Tse realleges paragraphs 1-38.

51.    Pax retaliated against Tse for exercising her FMLA rights.

52.    Pax demoted and suspended Tse because she took FMLA leave.

53.    Pax refused to allow Tse to return to work after her FMLA leave and terminated Tse's employment to retaliate against her for taking the leave.

54.    Pax's unlawful conduct has caused and continues to cause Tse past and ongoing damages.

55.    Tse has retained the undersigned counsel and is obligated to pay them a reasonable fee for their services

WHEREFORE, Plaintiff Christy Tse seeks judgment prohibiting the discriminatory practices set forth above, an order awarding back pay, front pay, liquidated damages, attorneys' fees and costs, equitable relief including reinstatement, and any other relief that this Court deems just and equitable.

### Demand for Jury Trial

Plaintiff Christy Tse hereby demands a trial by jury of all issues so triable.

Respectfully submitted this 6th day of February, 2026.

BEDELL, DITTMAR, DeVAULT, PILLANS & COXE
    Professional Association

By:  s/Michael E. Lockamy
      Michael E. Lockamy (Lead Counsel)
      Florida Bar No. 69626
      Email: mel@bedellfirm.com
      William S. Weber
      Florida Bar No. 1032238
      Email: wsw@bedellfirm.com
      Taylor M. Collins
      Florida Bar No. 1069732
      Email: tmc@bedellfirm.com
      The Bedell Building
      101 East Adams Street
      Jacksonville, Florida 32202
      Telephone: (904) 353-0211
      Facsimile: (904) 353-9307

Counsel for Plaintiff

11